UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 15-cv-61845-MIDDLEBROOKS

NOY HADAR, on Behalf of Himself and
All Others Similarly Situated,

    Plaintiff,

v.

BROWARD COUNTY, *et al.*,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS

THIS CAUSE comes before the Court on Defendant Broward County's Motion to Dismiss Counts I and II of the Amended Complaint (the "County's Motion to Dismiss") (DE 17) and Defendant Spirit Airlines'[1] Motion to Dismiss Complaint (the "Airlines' Motion to Dismiss") (DE 84). The Motions are fully briefed and I held oral argument on June 15, 2016. For the following reasons, the County's Motion to Dismiss is granted.

### I. BACKGROUND

Plaintiff Noy Hadar lives below "the south runway flightpath for the Ft. Lauderdale-Hollywood International Airport. In approximately 2014, the new flight runway became operational." (DE 15, "Am. Compl." at ¶ 7). Broward County approved the creation of the runway. (*Id.* at ¶ 8).

---

[1] Defendants Southwest Airlines, American Airlines, Inc. (named in this action as "American Airlines Group Inc."), Delta Air Lines, Inc. (named as "Delta Airlines"), JetBlue Airways Corp., United Airlines, Virgin America Inc., Alaska Airlines and Frontier Airlines (collectively with Spirit, the "Movant Airlines") all joined Spirit's motion. (DE 94).

Plaintiff alleges that, at the time he acquired his home, he possessed the "following rights":

a. To be free from trespass.

b. To quiet enjoyment.

c. To liveability, in that [his] home would function for its purpose, being a residence.

d. To be free from undue noises, fumes, residues, pollutants, glare, vibrations and other nuisances.

e. To have and enjoy the normal amenities of a home, including telephones and television including an adequate antenna or cable TV service.

f. To continued financing options, including qualification for mortgage loans.

g. To be free of fear.

h. To provide a safe, secure home atmosphere for children.

i. To zoning and land use controls which did not interfere with use or saleability.

j. To be free from regulations and laws which would cause third persons (aircraft operators) to trespass on their home and inflict nuisances and distress on [Plaintiff].

(Id. at ¶ 10). Plaintiff alleges that the new runway and its corresponding flightpath "is substantially interfering with the rights of Plaintiff and other residents to use and enjoy their properties. The resulting noise pollution is unbearable, and amounts to an unconstitutional taking." (Id. at ¶ 13).

On September 1, 2015, Plaintiff filed the instant action against the County and multiple airlines that use the airport. (DE 1). Plaintiff also seeks to certify a class of similarly situated individuals. (Am. Compl. at ¶¶ 14-20). Plaintiff subsequently filed an amended complaint. ("Am. Compl."). In his amended complaint, Plaintiff alleges four claims: (Count I) "unconstitutional taking under the Fifth Amendment . . . and a violation of due process and

2

privacy under the Fourteenth Amendment" against the County, (Count II) negligence against the County, (Count III) unjust enrichment against multiple airlines ("Airline Defendants"), and (Count IV) civil trespass against the Airline Defendants. (*Id.* at Counts I-IV).

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) allows for dismissal of a case when the court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). A defendant can move to dismiss a complaint under Rule 12(b)(1) for lack of subject matter jurisdiction by either facial or factual attack. *McElmurray v. Consolidated Gov't of Augusta-Richmond County*, 501 F.3d 1244, 1251 (11th Cir. 2007). "A facial attack on the complaint requires the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* (quotations and citations omitted). By contrast, a factual attack on a complaint challenges the existence of subject matter jurisdiction using extrinsic evidence, such as affidavits or testimony. *Id.* The burden for establishing federal subject matter jurisdiction rests with the party bringing the claim. *See McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002).

## III. DISCUSSION

### A. Takings Claim

**The Parties' Positions.** The County moves to dismiss Count I—the takings claim—for lack of subject matter jurisdiction. (DE 17 at 4). Specifically, the County argues that a takings claim based on the Fifth and Fourteenth Amendments may be brought in federal court only after "available state remedies have been exhausted." (*Id.*). The County notes that Florida "provides the remedy of inverse condemnation in airport and aviation projects." (*Id.*). Anticipating Plaintiff's response, the County contends that—even if Plaintiff concedes he has not suffered a

loss in property value—he must first exhaust the state remedy before coming to federal court. (*Id.* at 5).

In response, Plaintiff argues there is no adequate and available state remedy for Count I, which alleges an "unconstitutional taking due to noise pollution." (DE 58 at 4). Plaintiff represents that an inverse condemnation action in Florida requires a "'substantial loss' in property value." (*Id.* at 10). Here, Plaintiff argues he does not allege "any loss in property value," and contends that the inverse condemnation proceeding is, therefore, not available or adequate. (*Id.*).[2] Plaintiff continues, arguing that he cannot first go to state court because "with no *Jennings* reservation[3], where a plaintiff loses in state court seeking an inverse condemnation theory, which includes allegations of a taking, the plaintiff is estopped from later going into federal court based solely on claims of a taking." (*Id.* at 11).[4]

In reply, the County contends "that diminution in property value is a necessary element of a takings claim" under both the Florida and United States constitutions. (DE 59 at 3). Thus, according to the County, either (1) Plaintiff failed to exhaust and the claim should be dismissed for lack of jurisdiction or (2) Plaintiff now fails to allege a taking and the case should be dismissed for failure to state a claim. (*Id.* at 3).

---

[2] Plaintiff also contends that he "does not allege property value diminution." (DE 58 at 7).
[3] A *Jennings* reservation occurs where "would-be federal plaintiffs [] reserve their right to a federal court hearing for some federal constitutional claims merely by making a formal reservation in the state court proceedings of their intent to bring their federal claims in a federal court should the state court, applying state law, find adversely to them." *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1305 (11th Cir. 1992).
[4] Plaintiff also contends that judicial estoppel prevents the County from arguing the state procedure is adequate, because the County is currently denying liability in inverse condemnation proceedings brought by other plaintiffs. (DE 58 at 14). This is argument fails, as a general denial of a taking is not inherently inconsistent with its current position that Plaintiff has failed to exhaust. *See Palmer Ranch Holdings Ltd v. C.I.R.*, 812 F.3d 982, 995 (11th Cir. 2016) (denying judicial estoppel argument because the party's positions were not inconsistent).

4

**Takings Jurisprudence.** The Fifth Amendment prohibits the taking of property, "without just compensation." U.S. Const. amend. V.[5] Count I alleges a taking based on interference with Plaintiff's enjoyment of his property based on noise pollution.

The Supreme Court has recognized that takings analysis applies to flights "over private land" if they are "so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *United States v. Causby*, 328 U.S. 256 (1946); *Griggs v. Allegheny Cty., Pa.*, 369 U.S. 84, 87 (1962) (finding a taking occurred where there were "[r]egular and almost continuous daily flights, often several minutes apart . . . made by a number of airlines directly over and very, very close to [the] plaintiff's residence"). This type of takings claim is based on a physical invasion of property. *Lucas v. S. Carolina Coastal Council*, 505 U.S. 1003, 1015 (1992) (referring to *Causby*, 328 U.S. at 265 as applying takings law to "physical invasions of airspace").

The Supreme Court has extended this analysis to the context of private flights. In *Griggs*, the Supreme Court found that, where noise pollution from planes taking off and landing made homes "undesirable and unbearable for their residential use," there may be a takings claim against the county that created the airport. *Griggs v. Allegheny Cty., Pa.*, 369 U.S. 84, 87 (1962). In other words, the government has "taken" an air easement. *Id.* at 88.

"In addition to physical invasions of property, the Supreme Court has also accorded 'categorical treatment,' invariably requiring compensation, to cases 'where regulation denies all economically beneficial or productive use of land.'" *New Port Largo, Inc. v. Monroe Cty.*, 95 F.3d 1084, 1089 (11th Cir. 1996) (quoting *Lucas*, 505 U.S. at 1015).

---

[5] "The Fifth Amendment's prohibition, of course, applies against the States through the Fourteenth Amendment." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 176 (1985).

5

A takings claim must, however, be ripe before it is brought in federal court. "[P]otential federal court plaintiffs" are required to "pursue any available state court remedies that might lead to just compensation before bringing suit in federal court under section 1983 for claims arising under the Fourteenth and Fifth Amendments for the taking of property without just compensation." *Fields v. Sarasota Manatee Airport Auth.*, 953 F.2d 1299, 1303 (11th Cir. 1992). "[I]f a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation . . . until it has used the procedure and been denied just compensation." *Williamson Cty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985). "[T]he State's action [] is not 'complete' until the State fails to provide adequate compensation for the taking." *Id.* For example, if the state provides "an inverse condemnation action," then the claim is "premature" in federal court unless the plaintiff has "shown that the inverse condemnation procedure is unavailable or inadequate, [or] until [he] has utilized that procedure." *Id.* at 197. This state-litigation requirement, first articulated in *Williamson County*, "boils down to the rule that state courts always have a first shot at adjudicating a takings dispute because a federal constitutional claim is not ripe until the state has denied the would-be plaintiff's compensation for a putative taking, including by unfavorable judgment in a state court proceeding." *Agripost, LLC v. Miami-Dade Cty., Fla.*, 525 F.3d 1049, 1052 (11th Cir. 2008).

**Adequate and Available Remedy.**  Florida provides an inverse condemnation proceeding where the state has "taken private property without a formal exercise of the power of eminent domain." *Schick v. Florida Dep't of Agric.*, 504 So. 2d 1318, 1319 (Fla. 1st DCA 1987). Plaintiff has not availed himself of that remedy. Instead, Plaintiff argues that Florida's inverse condemnation proceeding is inadequate or unavailable.

Plaintiff contends Florida does not provide an adequate remedy and the claim is, therefore, ripe for adjudication in federal court. Plaintiff represents that he is not alleging the noise pollution is "a substantial ouster and deprivation of all beneficial use of [his] properties nor a substantial decrease in the market value of [his] properties." (DE 58 at 6). Plaintiff, therefore, contends that he does not have an adequate remedy at state law. Plaintiff cites *Bakus v. Broward Cty.*, 634 So. 2d 641 (Fla. 4th DCA 1993), for this proposition, claiming it is "dispositive" of this issue. (*Id.* at 5).

This case does not support Plaintiff's position. In *Bakus*, the Fourth District Court of Appeal of Florida reviewed an inverse condemnation action based on noise pollution resulting from the temporary use of an alternate runway. *Bakus*, 634 So. 2d 641. The *Bakus* court explained the elements of the state law remedy: "[t]o establish a claim for inverse condemnation, appellants were required to demonstrate *either* (1) a continuing physical invasion of the property, *or* (2) a substantial ouster and deprivation of all beneficial use of the property." *Bakus v. Broward Cty.*, 634 So. 2d 641, 642 (Fla. 4th DCA 1993) (emphasis added) (internal citations omitted). This language indicates that Plaintiff need not necessarily show a substantial ouster and deprivation of all beneficial use—which Plaintiff argues he does not allege in his Amended Complaint—as long as he can establish physical invasion. The *Bakus* court continued: "appellants in the instant case were unable to demonstrate a continuing physical invasion of their properties because appellee used the alternate runway only temporarily as the main runway. Furthermore, appellants proved neither a substantial ouster and deprivation of all beneficial use of their properties nor a substantial decrease in the market value of their properties." *Id.* at 643-44. The *Bakus* court ultimately concluded there was no taking. *Id.* But the language used by the *Bakus* court indicates that the lack of substantial decrease in market value is not the only means

of relief under Florida's inverse condemnation action. To the contrary, the reasoning in *Bakus* indicates an inverse condemnation claim may lie based on an ongoing physical invasion of Plaintiff's airspace based on noise pollution.

Even if Plaintiff established that he could not succeed under the standard in *Bakus*, that case applied Florida state law, not federal takings law under the Fifth Amendment, which is the current claim. Plaintiff has not established that he cannot raise a federal takings claim in a state court inverse condemnation proceeding. To the contrary, Florida courts have adjudicated Fifth Amendment takings claims, and they are bound by federal precedent. *St. Johns River Water Mgmt. Dist. v. Koontz*, 77 So. 3d 1220, 1229-30 (Fla. 2011), *reversed on other grounds*, 133 S. Ct. 2586, 186 L. Ed. 2d 697 (2013) ("[W]e must follow the decisions of the United States Supreme Court with regard to Fifth Amendment takings jurisprudence.").

Finally, Plaintiff's attempt to concede a lack of property-value-loss does not support his claim that Florida's inverse condemnation proceeding is unavailable or inadequate. Instead, Plaintiff's disclaimer of "any loss in property value" would appear to preclude Plaintiff from prevailing under a federal takings claim.

In *Fields*, the Eleventh Circuit analyzed the interplay between a claim brought under Florida law and a federal takings claim. *Fields*, 953 F.2d 1299. There, the plaintiffs first brought an inverse condemnation claim in state court under state law but failed to bring their federal takings claim in the same action. *Id.* at 1302. After the plaintiffs lost in state court, they subsequently filed a federal takings claim in federal court. *Id.* The Eleventh Circuit applied Florida's *res judicata* principles to bar plaintiff's federal takings claim. *Id.* at 1309. In doing so, the Eleventh Circuit reviewed the claims under Florida and federal law:

> The Florida cause of action required establishing that the homeowners' properties had actually decreased in value. *Fields*, 512 So.2d at 964–65. The federal remedy,

8

> on the other hand, required a showing that a difference existed in the market value of the property based on the proximity of the airport. *U.S. v. Causby*, 328 U.S. 256, 261–62 (1946). Federal takings law, unlike Florida takings law, requires compensation for decreased utility. *Causby*, 328 U.S. at 261–62; *Griggs v. Allegheny County*, 369 U.S. 84, 89–90 (1962). *See also Transwestern Pipeline Co. v. O'Brien*, 418 F.2d 15, 21 (5th Cir. 1969) (measure of damages is difference between the market value of the land without the easement and the market value of the land encumbered by the easement).

*Id.* at 1308. Thus, to establish a taking under federal law, Plaintiff must allege some damage to property value. Although the Eleventh Circuit noted in *Fields* that the requirements are different, a federal takings nevertheless requires a difference in market value.

This is further evidenced by the cases the Eleventh Circuit cited in *Fields*. For example, the Eleventh Circuit cited the Supreme Court in *Causby*. In *Causby*, the Supreme Court found a takings claim lies in actions based on airport flight patterns where "there was a diminution in value of the property and that the frequent, low-level flights were the direct and immediate cause." *United States v. Causby*, 328 U.S. 256, 267 (1946); *see also Dugan v. Rank*, 372 U.S. 609, 624-25 (1963) ("Damages in this instance are to be measured by the difference in market value of the respondents' land before and after the interference or partial taking.") (applying fair market value difference to claim of taking of water rights). Thus, Plaintiff's disclaimer of any loss to property value would concede an essential element of his federal takings claim.

As Plaintiff has not established the state inverse condemnation proceeding is inadequate to bring his federal takings claim, Plaintiff's claim is dismissed for lack of jurisdiction. Plaintiff must bring his claim in state court. I take no position as to whether Plaintiff should make a *Jennings* reservation,[6] or whether Plaintiff will be able to return to this Court after raising his federal takings claim in Florida's inverse condemnation proceeding.[7]

---

[6] As applied to federal takings claims, "*Fields's* gloss on the *Jennings* reservation has since become the settled law in this circuit." *Agripost, LLC v. Miami-Dade Cty., Fla.*, 525 F.3d 1049,

9

## B. The Three Remaining State-Law Claims

Plaintiff also alleges three additional state law claims. Pursuant to 28 U.S.C. § 1367(c), the Court "has the discretion to decline to exercise supplemental jurisdiction over non-diverse state law claims, where the Court has dismissed all claims over which it had original jurisdiction." *Baggett v. First Nat. Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997). "'Where § 1367(c) applies, considerations of judicial economy, convenience, fairness, and comity may influence the court's discretion to exercise supplemental jurisdiction.'" *Ameritox, Ltd. v. Millennium Labs., Inc.*, 803 F.3d 518, 537 (11th Cir. 2015) (quoting *Baggett*, 117 F.3d at 1353). Here, the interests of judicial economy and convenience are best served by declining the exercise of jurisdiction and permitting the Parties to litigate all their claims in one forum. Although fairness concerns do not weigh in either direction, comity weighs in favor of declining to exercise jurisdiction. *Id.* at 540 ("Federal courts are (and should be) loath to wade into

---

1054 (11th Cir. 2008). However, the validity of making such a reservation is in dispute. *Id.* at 1055 ("Although the Supreme Court's reasoning in *San Remo Hotel* seems to undercut much of the support for *Jennings* and *Fields*, we need not decide now whether they have been implicitly overruled to the extent that they would permit the reservation of federal claims in non-*Pullman* situations."). Regardless, Plaintiff's inability to return to the federal court to litigate his federal claim does not impact analysis of whether he has failed to first litigate in state court. *San Remo Hotel, L.P. v. City & Cty. of San Francisco, Cal.*, 545 U.S. 323, 342 (2005) ("We have repeatedly held . . . that issues actually decided in valid state-court judgments may well deprive plaintiffs of the 'right' to have their federal claims relitigated in federal court.") (applying issue preclusion to subsequent federal takings claim after state law takings claim was litigated in state court).

[7] Indeed, the inability to litigate in a federal forum has been cited as a reason to dispose of the state-litigation requirement. *See San Remo Hotel*, 545 U.S. at 351("*Williamson County* all but guarantees that claimants will be unable to utilize the federal courts to enforce the Fifth Amendment's just compensation guarantee.") (Rehnquist, J., concurring) (concurring in judgment and calling for reconsideration of *Williamson County's* state-litigation requirement); *see also Arrigoni Enterprises, LLC v. Town of Durham, Conn.*, 136 S. Ct. 1409, 1412 (2016) (Thomas, J., dissenting) (calling for reconsideration of *Williamson County*).

uncharted waters of state law, and should only do so when absolutely necessary to the disposition of a case."). I, therefore, decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims. Accordingly, it is

**ORDERED AND ADJUDGED** that

1. Defendant Broward County's Motion to Dismiss (DE 17) is **GRANTED**. Because I dismiss the only federal claim (Count I), and I decline to exercise supplemental jurisdiction over the remaining state law claims, all counts are dismissed.

2. Plaintiff's Amended Complaint (DE 15) is **DISMISSED**.

3. The Clerk of Court Shall **CLOSE** this Case and **DISMISS all pending motions as MOOT**.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida, this 16 day of June, 2016.

DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

cc: Counsel of Record